UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 22-cr-231(JMC) |
| v. | : | |
| | : | |
| | : | |
| MICHAEL THOMAS PRUDEN, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENSE MOTION TO SUPPRESS EVIDENCE (ECF 51)

The United States, through its undersigned attorneys, respectfully opposes the Defendant's Motion to Suppress Evidence (ECF 51). On September 1, 2018, the defendant was stopped for a few moments by the police in a public park in Norfolk, Virginia, after a 911 caller reported that a man matching defendant's physical description was walking around the park with mace, impersonating the police. The defendant was released after a pat-down found no mace on his person. The United States has asked the Court to admit evidence of this incident under Federal Rule of Evidence 404(b). ECF Nos. 46, 54-1. The defendant now alleges that this stop violated his Fourth Amendment rights, and asks the Court to suppress all facts associated with this incident, including the fact he was present in the park at all. Because no Fourth Amendment violation occurred here—this minimally-invasive stop was properly supported by reasonable suspicion—the defendant's motion should be denied.

I.  **BACKGROUND**

   A. **The Offense Conduct and Charges**

Defendant Michael Pruden is charged with assaulting five different victims—John Doe 1, John Doe 2, John Doe 3, John Doe 4, and John Doe 5 (collectively, the "victims")—on five different occasions in Meridian Hill Park ("MHP"), which is federally-owned land. MHP is

1

informally known to be a meeting location in the evening hours for men seeking to engage in consensual sexual encounters with other men, a practice commonly called "cruising." In each of the assaults, the defendant approached the victim at night with a flashlight, gave him police-style commands, and sprayed him in the face with a chemical irritant. During two of the assaults, the defendant also falsely announced himself as a United States Park Police officer. For this conduct, the indictment charges the defendant with five violations of 18 U.S.C. § 113(a) (Assault on Federal Land with a Dangerous Weapon) and two violations of 18 U.S.C. § 912 (Impersonation of a Federal Officer). First Superseding Indictment, ECF 30. The indictment also alleges that the defendant targeted four of the victims because of their actual or perceived sexual orientation. *Id*.; U.S.S.G. 3A1.1(a).

### B. 2018 Incident at Northside Park

In the course of investigating the charged assaults that occurred in MHP, law enforcement learned of pepper spray assaults involving the defendant that followed a similar pattern in Northside Park, which is a state park in Norfolk, Virginia. The defendant is from Norfolk, and his parents' home is located a short drive from the park. Northside Park is known to have cruising activity at night in the wooded trail areas.

One evening in 2018, a male victim was standing with a group of people in Northside Park when a man later identified as the defendant approached them with a red and blue flashing light that looked like a police light. The defendant was dressed in what appeared to be a black uniform and directed the group to "come here." This prompted most of the group to flee, but the male victim moved closer to see what was happening. As he did so, the defendant pulled out an object and began repeatedly spraying the male victim in the face with pepper spray. The male victim fled and got assistance to wash off the spray.

Some time later, on September 1, 2018, the male victim saw his assailant in the park again. This time he called 911, stated that a man was in the park impersonating the police, carrying mace in his hand, and trying to mace people, and provided a physical description of a tall, light-skinned Black man wearing glasses. The caller further stated that the suspect was driving a silver Toyota Camry parked at a funeral home across from the park, and that the suspect had maced people in the park in the past. A Norfolk Police Department officer arrived within minutes and found the defendant in the park; the officer also found the parked Toyota Camry, which was registered to the defendant. Because the 911 caller had reported the suspect carrying mace, the officer conducted a protective pat-down of the defendant, which had negative results. When asked, the defendant told the officer he had not seen anyone that night and that someone must be lying to the police. He was then released.

The defense now moves to suppress all evidence concerning the September 1, 2018, stop, alleging that it violated the defendant's Fourth Amendment rights because the stop lacked probable cause. For the reasons that follow, this motion should be denied.

## II.     LEGAL STANDARD

While the Fourth Amendment generally requires probable cause for law enforcement to stop or seize a person, *Terry v. Ohio*, 392 U.S. 1 (1968), carves out an exception to this rule for "'brief encounter[s] between a citizen and a police officer on a public street,'. . . which involve 'necessarily swift action predicated upon the on-the-spot observations of the officer on the beat.'" *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) and *Terry*, 392 U.S at 20). Such brief encounters "need not proceed pursuant to a warrant, neither must they be supported by probable cause. Instead, an officer may briefly detain a citizen if he has reasonable, articulable suspicion that criminal activity may be afoot." *Id*. This

does not require absolute certainty that the individual is involved in unlawful conduct; rather, "'the issue is whether a reasonably prudent man in the circumstances would be warranted in his belief that the suspect is breaking, or about to break the law.'" *Id*. (quoting *Terry*, 392 U.S. at 20).  Such stops require "only a 'minimal level of objective justification,' *INS v. Delgado*, 466 U.S. 210, 217 (1984), and an officer may initiate one 'based not on certainty but on the need to 'check out' a reasonable suspicion.'"  *Id*. (quoting *United States v. Clark*, 24 F.3d 299, 303 (D.C. Cir. 1994)).  This is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."  *Wardlow*, 528 U.S. at 123.

When determining whether a *Terry* stop was supported by reasonable suspicion, courts must consider the "totality of the circumstances as the officer on the scene experienced them" rather than "separately scrutinize[ing] each factor relied upon the officer."  *Edmonds*, 240 F.3d at 59.  Where a suspect matches a description provided by a witness to a recent crime and is found near the crime scene, there is reasonable suspicion to support a *Terry* stop of that individual.  *See, e.g*., *United States v. Abdus-Price*, 518 F.3d 926, 930-31 (D.C. Cir. 2008) (affirming reasonable suspicion where defendants generally matched description of robbery lookout and were found nearby, regardless of minor discrepancies in the match, and reiterating that "a *Terry* Stop requires only a minimal level of objective justification" (citations omitted)); *United States v. Simpson*, 992 F.2d 1224, 1226 (D.C. Cir. 1993) (upholding stop of suspect who "was wearing clothing similar to that described by the victim, was of the same general age group . . . , was of the same race and physical build of the alleged rapist, and was in the vicinity of the crime").

### III.    ARGUMENT

Notably ignoring all case law concerning *Terry v. Ohio*, the defendant's motion asserts that the September 1, 2018, encounter between the defendant and the Norfolk Police officer violated

4

his Fourth Amendment rights because the stop lacked probable cause, and claims that it therefore must be suppressed. Because the facts of this incident typify the type of brief law enforcement encounter permitted under *Terry* and its progeny, and because it was amply supported by reasonable articulable suspicion, the motion should be denied.

At the time of this encounter, the totality of the circumstances supported reasonable articulable suspicion for the officer to stop the defendant in the park. The police officer was dispatched to Northside Park to investigate a 911 call reporting a crime in progress, with a physical description of the suspect and the suspect's car provided. Shortly after arriving at the scene, the officer encountered the defendant, who the officer identified as matching the 911 caller's physical description, and he also found the Toyota Camry the 911 caller had described. The officer stopped the defendant to further investigate, including by obtaining his identification, conducting a weapons pat-down, and identifying the owner of the Camry through a law enforcement database. Upon finding no weapons on the defendant and no other basis for detaining him—the defendant had no warrants and the car's registration was valid—the officer released the defendant without further incident.

Given the totality of the circumstances and the facts known to the officer, this stop comported with the constitutional requirements of a *Terry* stop: at a location where a 911 caller had just reported a suspect trying to assault people with mace, the officer found the defendant, who matched the caller's physical description, as well as his car, which the caller had also identified. After a brief investigation did not reveal further grounds for detaining him, the defendant was released. Because no probable cause was required to justify this type of encounter, and because the stop was amply supported by reasonable suspicion, there is no basis for suppression of the facts

of this incident, which, comports with the admissibility requirements of Rule 404(b). The defendant's motion should be denied.

## IV. CONCLUSION

For the reasons given above, the Defendant's Motion to Suppress Evidence Arising From the September 1, 2018 Violation of his Constitutional Rights (ECF 51) should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   */s/Andrew Cherry*
        ANDREW CHERRY
        CA Bar No. 315969
        Trial Attorney, Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Ave. NW
        Washington, DC 20532

        RISA BERKOWER
        NY Bar No. 4536538
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D St. NW
        Washington, DC 20532
        (202) 803-1576 (Berkower)
        (202) 445-4779 (Cherry)
        Risa.Berkower@usdoj.gov
        Andrew.cherry@usdoj.gov