UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 22-cr-231(JMC) |
| v. | : | |
| | : | |
| | : | |
| MICHAEL THOMAS PRUDEN, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' BRIEF SUPPORTING ADMISSION OF 911 CALL**

On September 24, 2024, during trial in this matter, this Court admitted, and the jury heard, over defense counsel's objections, a June 11, 2020, 911 call made by Keith Hart.[1] This 911 call was made by Mr. Hart immediately after the assault of Carl Williams. It contains statements of Mr. Hart, Mr. Williams, a bystander, and a 911 dispatcher. The statements of Mr. Hart and Mr. Williams are admissible as either non hearsay, or under a hearsay exception, and were properly admitted at trial.[2]

**I.      Relevant Facts**

Mr. Hart, who testified and was subject to fulsome cross examination, called 911 to request police assistance for an assault in Meridian Hill Park that had just occurred; based on the date and nature of the call, the victim is Carl Williams, although Mr. Williams is not mentioned by name, nor did Mr. Hart testify to that fact.

---

[1] The Government moved for the call's admission. The defense objected. The Court overruled the objection, and permitted the call to be published to the jury. 9/24/24 Trial Tr. at 264-65. The call as admitted during Mr. Hart's redirect examination; the Defense was permitted to recross him.

[2] The 911 operator's statements are neither testimonial, nor being offered for the truth of the matter asserted. Nor are two questions asked by a bystander hearsay, as they are questions, not statements, and are not being offered for the truth of the matter asserted. Plainly relevant, they are admissible under Rule 401.

1

### a. The 911 Call

During the first minute of the call, Mr. Hart can be heard giving the dispatcher the location of the incident, and relays that a person was hit in the head. He describes the victim at approximately 1:13 (a "black male") and notes, at 1:30, that the incident just happened. He then relays what at first it appears he had been told by the victim – that somebody hit him in the head, flashed a light in his face, and sprayed him with mace. Later, Mr. Hart clarifies in testimony that he also witnessed this conduct. Mr. Hart then goes on at, 2:00, to give a description of one of the men involved as a 6'3" bald black male with black shirt and shorts.

By 2:28, it is clear that the dispatcher is collecting information at least in part for the purpose of providing medical care. The dispatcher describes the victim as a "patient," at which point Mr. Hart gives a description of the victim.

At approximately 2:50, Mr. Hart can be heard conversing with another individual, the bystander, and confirming that he [Mr. Hart] called the police. At 2:56, he is asked to provide a description of the suspect. In response, Mr. Hart relays back to the dispatcher the description given to him by the victim (black, heavy set, hat, etc.), and repeats again that the perpetrator flashed a light in the victim's face. After this, there is a discussion of where the suspect went after the attack, and Mr. Hart reports that he is in the park based on information provided by the victim. The call concludes with the dispatcher letting Mr. Hart know that the incident has been sent to dispatch. Mr. Hart states that he is on his way home, but wants to help the victim, and the call is concluded.

### b. Mr. Hart's Testimony and Prior Statements

When interviewed by law enforcement prior to his trial testimony, Mr. Hart explained that he had seen the assault firsthand, ran out of the park in response, and called 911 to help the victim. He reiterated this in his trial testimony. Specifically, he describes observing a person presenting

as a police officer, and seeing the officer spraying somebody. 9/24/24 Trial Tr. at 249. He followed the victim after the incident, and called 911 to get him medical attention. *Id*. He also testified that he witnessed firsthand the perpetrator shining a flashlight around the park and acting like a police officer. *Id*. at 251.

On cross examination, Mr. Hart's credibility was attacked through the suggestion that he told the defense investigator that the perpetrator was wearing a Covid mask. *Id*. at 257-58. He had neither testified to that fact, nor was it in his prior statements to law enforcement. On recross examination, Mr. Hart's credibility was attacked with the suggestion that he had lied about the victim and perpetrator being involved in a "lovers' quarrel." *Id.* at 268.

On redirect, Mr. Hart testified that the called 911 to get the victim medical attention. *Id.* at 28-29. Importantly, he also notes that while he was relaying information with the victim, it was consistent with what he himself had observed, *Id.* at 267, including the description of the attacker. He further testified that inconsistences in how the attacker was described and the manner in which he provided information to the 911 operator were derived from his desire to distance himself from the incident.

II. Discussion

    a. **Mr. Hart's Statements Describing what He Witnessed are Properly Admitted as Present Sense Impressions.**

Mr. Hart's statements describing the victim, and his need for medical attention, his observations of what happened, and their location in the park are admissible as present sense impressions. A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). This exception is grounded in the idea that "statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement

3

negate the likelihood of deliberate or conscious misrepresentation." *Navarette v. California*, 572 U.S. 393, 400 (2014) (citing Advisory Committee's Notes on Fed. Rule Evid. 803(1)); *see also United States v. Wills*, No. 18-0117 (PLF), 2018 U.S. Dist. LEXIS 215159, at *11 (D.D.C. Dec. 21, 2018) ("The theory is that (1) 'the closeness in time between the perceived event and the declarant's description virtually eliminates dangers of faulty memory,' and (2) 'the absence of an opportunity for reflection reduces the likelihood of deliberate or conscious misrepresentation.'" (quoting 30B Charles A. Wright & Jeffrey Bellin, Federal Practice & Procedure § 6812 (2017))).

The Federal Rules of Evidence allow for the admission of out-of-court statements that meet the criteria for a "present sense impression" because the conditions under which such statements are made assures their reliability. Fed. R. Evid. 803(2) & (1); *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003) ("The rationale underlying the 'excited utterance' exception is that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." (quotation marks and citation omitted)). Under the plain terms of the Rule, where evidence qualifies under these exceptions, it is admissible even if the declarant does not testify. Fed. R. Evid. 803. And, admitting 911 calls that qualify as present sense impressions do not raise Confrontation Clause concerns because such statements are non-testimonial. *Davis*, 547 U.S. at 827. ("[a] 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance").

To admit a statement as a present-sense impression, the government must show: "(1) the statement describes or explains an event or condition, (2) which the declarant perceived firsthand,

4

and (3) the statement was made contemporaneously — while the declarant perceived the event or condition or immediately thereafter." *Wills*, 2018 U.S. Dist. LEXIS 215159, at *6.

The government has made this showing as to the events that Mr. Hart witnessed firsthand, and described on the call, including the fact that an attack had just happened (e.g., at 1:10, "somebody hit him in the head"), and his description of the victim. This constitutes the quintessential contemporaneous description of "current circumstances requiring police assistance" that warrants admitting this 911 calls as present sense impressions. *Davis*, 547 U.S. at 826; *see also Navarette*, 572 U.S. at 400 (observing that "statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation"); *Wills*, 2018 U.S. Dist. LEXIS 215159, at *6; *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 234 (D.D.C. 2014) (admitting statements on radio run call that were made just after the declarant was interacting with the defendant and chasing him down the street). And, as to timing, the Government made the showing of contemporality. On the call, Mr. Hart can be heard telling this dispatcher that the events at issue had just happened.

> **b. Both the Victim's and Mr. Hart's Statements Describing the Perpetrator are Admissible as Exited Utterances.**

On the call at approximately 3:10-3:20, the victim can be heard describing the perpetrator. These statements are admissible as excited utterances; the victim had just been pepper sprayed, and it's clear from the testimony was still experiencing the stress of the attack.

An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2) (quoting *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001)); *see also United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999) ("This exception is premised on the belief that a person is unlikely to

fabricate lies (which presumably takes some deliberate reflection) while his mind is preoccupied with the stress of an exciting event."). For a statement to be admissible under this Rule, the government must establish that the witness has personal knowledge of the event in question, *Ash v. Reilly*, 433 F. Supp. 2d 37, 45 (D.D.C. 2006), as well as three criteria: "(1) the occurrence of a startling event; (2) that the declarant made the statement while under the stress of excitement caused by the event; and (3) that the declarant's statement relates to the startling event." *Alexander*, 331 F.3d at 122. In determining whether a statement was made under the stress caused by the startling event, a court should evaluate "the lapse of time between the startling event and the declarant's statement" as well as "the characteristics of the event; the subject matter of the statement; whether the statement was made in response to an inquiry; and the declarant's age, motive to lie and physical and mental condition." *Alexander*, 331 F.3d at 122-23. Where the excitement caused by the event continues for some time after the event has occurred, a temporal gap between the event and the utterance is not itself dispositive." *See id.* at 122-23. Further, the fact that the statements may be in a calm voice does not automatically negate their status as excited utterances under this rule. *See United States v. Clemmons*, 461 F.3d 1057 (8th Cir. 2006) (affirming admission of a victim's statements to police despite that he was "talking on his cell phone in a calm voice" when he made them); *United States v. Vigil*, No. 20-2160, 2021 WL 4888616, at *4 (10th Cir. Oct. 20, 2021) ("even assuming [the declarant] A.W. seemed calm when she left, that fact isn't dispositive because 'the declarant need not show signs of excitement immediately upon witnessing or experiencing [the] startling event.). Like present sense impressions, excited utterances do not implicate the Confrontation Clause.

      Here, both Mr. Hart and the victim had firsthand knowledge of the victim's appearance. The statements describing him by both men were made shortly after the attack, while the defendant

was still at-large.  These facts qualify this information as excited utterances:  they were made in close temporal proximity to a startling event—the assault—and both men were seeking police assistance to respond to the ongoing emergency caused by the assailant.  *See Alexander*, 331 F.3d at 122; *United States v. Cassell*, No. 1:00-cr-270-RCL-1, 2024 U.S. Dist. LEXIS 63453, at *8 (D.D.C. Apr. 8, 2024) (admitting 911 calls made "for assistance with an ongoing emergency" and where police ultimately did respond).

### c. Mr. Hart's Prior Consistent Statements are Admissible to Rehabilitate his Credibility.

Under Rule 801(d)(1)(B), if a declarant testifies, then his/her prior consistent statements are not hearsay, and admissible if offered to rebut an express or implied charge that the declarant recently fabricated testimony or to rehabilitate the declarant's credibility as a witness when attacked on another ground.  FRE 801(d)(1)(B).

During cross examination, Mr. Hart's credibility was attacked as to both his description of the perpetrator (regarding whether he was wearing a mask), more generally with regard to the possible motivation for the assault.  His description of the perpetrator, however, was in large part consistent between his testimony and the 911 call.  Thus, his description of the perpetrator during the 911 call is admissible as a prior consistent statement under Rule 801.

### d. Mr. Hart and Mr. William's Statements Made for Medical Diagnosis or Treatment are Admissible.

Under Federal Rule of Evidence 803(4), statements, "made for — and is reasonably pertinent to — medical diagnosis or treatment"; and which describe "medical history; past or present symptoms or sensations; their inception; or their general cause" are not hearsay regardless of whether the declarant testifies at trial.  On the 911 call, Mr. Hart can be heard describing the

7

victim, and the fact he got hit in the head, and he testified that this was for the purpose of getting the victim medical attention. Such statements are admissible.

### III.     Conclusion

For the foregoing reasons, the United States asks the Court not to disturb its decision to admit and play for the jury Mr. Hart's 911 call.

				Respectfully submitted,

				MATTHEW M. GRAVES
				UNITED STATES ATTORNEY
				D.C. Bar Number 481052


By:		*/s/ Andrew Cherry*

				ANDREW CHERRY
				CA Bar No. 315969
				Trial Attorney, Civil Rights Division
				U.S. Department of Justice
				TIM VISSER
				Assistant United States Attorney
				U.S. Attorney's Office for the District of Columbia
				(202) 445-4779 (Cherry)
				Timothy.Visser@usdoj.gov
				Andrew.Cherry@usdoj.gov